UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>  v.<br><br>JASON A. TOBEY,<br><br>    Defendant-Appellant. | No. 2:19-cr-00150-JAM<br><br>**ORDER AFFIRMING JASON A. TOBEY'S CONVICTION AND SENTENCING** |

In October 2018, the United States charged Jason Tobey with a Class B misdemeanor: threatening or intimidating a forest officer engaged in the performance of his official duties. Compl. ¶ 9 (citing 36 CFR 261.3(c)), ECF No. 2. Tobey retained counsel and entered a plea of not guilty. Sept. 25, 2018 Min. Order, ECF No. 1; March 6, 2019 Min. Order, ECF No. 6. The magistrate judge held a one-day bench trial, then allowed parties to file closing briefs. May 13, 2019 Min. Order., ECF No. 13; May 24, 2019 Order; see also Brief by Jason A. Tobey, ECF No. 21;

1

Brief by USA, ECF No. 22. After considering the parties' briefs and the evidence presented at trial, the Court found Tobey guilty of violating 36 CFR 261.3(c). Decision and Judgment at 7, ECF No. 27. It sentenced him to a 24-month term of unsupervised probation and ordered him to pay a $500 fine. Id.

Tobey appealed his conviction to the district court.[1] ECF No. 25. Upon Tobey's appeal, the Court appointed appellate counsel from the Federal Defender's Office. Sept. 9, 2019 Order, ECF No. 28. Tobey argues the district court should vacate his conviction for four reasons: (1) the magistrate judge abused its discretion when it denied Tobey's pretrial motion to substitute counsel; (2) the magistrate judge violated the Criminal Justice Act when he declined to determine whether Tobey was eligible for appointed counsel; (3) Tobey's trial counsel was constitutionally ineffective; and (4) Tobey's waiver of his right to testify was not knowing, intelligent, and voluntary.

As discussed below, neither of Tobey's right-to-counsel claims are ripe for review because Tobey is not facing a term of "actual imprisonment." See Scott v. Illinois, 440 U.S. 367, 373-74 (1979); U.S. v. Moran, 403 Fed. Appx. 222, 223-24 (9th Cir. 2010). Moreover, Tobey's right-to-testify claim fails because Tobey "remain[ed] silent in the face of his attorney's decision not to call him as a witness." U.S. v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999). Under the Ninth Circuit's caselaw, this amounts to a knowing, intelligent, and voluntary waiver.

---

[1] This appeal was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for March 13, 2020.

## I. JURISDICTION

A district court may "specially designate" magistrate judges within its district to exercise jurisdiction over the trial and sentencing of people charged with misdemeanor offenses. 18 U.S.C. § 3401(a). Because the Eastern District of California has designated its magistrate judges to exercise jurisdiction in these instances, it was proper for the magistrate judge to preside over "all pretrial, trial, and post-trial matters" in Tobey's case. E.D. Cal. L.R. 302(b)(3).

It is likewise proper for the district court to exercise jurisdiction over this appeal, as "an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402.

## II. BACKGROUND

In September 2018, members of the United States Forest Service were stationed at Mott Airport in Northern California to help fight the Delta fire. May 7, 2019 Tr. at 26:2-20. As part of this effort, the Forest Service flew helicopters in and out of Mott Airport. Id. at 26:17-24.

Jason Tobey lived near Mott Airport at the time. Id. at 261:7-9. On September 23, 2018, the helicopters flying nearby startled Tobey, his wife, and their service dog. Id. at 257:1-20, 260:4-5. At trial, Tobey's wife testified that the helicopters flew so close to their home that day that their dishes began to shake—one even fell off the shelf. Id. at 257:5-9. The helicopters also knocked a limb out of the Tobey's plum

tree. Ex. E to Decision and Judgment.

Frustrated, Tobey drove to Mott Airport. Id. at 186:3-21, 189:6-17. Jeffrey Schifflett, a Forest Service employee, stopped Tobey at the gate. Id. at 186:3-21. Owen Solomon, a contract worker who was managing operations at Mott airport that day, joined Schifflett. Id. at 78:6-12, 186:24-187:2. At trial, Schifflett and Solomon both testified that Tobey was angry when he arrived and throughout the interaction. Id. at 77:13-24, 189:3-21. Ultimately, Tobey threatened to "shoot [the helicopters] out of the sky" if he had to. Id. Solomon promised to tell the pilots not to fly over Tobey's house. Id. at 190:13-16. Satisfied, Tobey left. Id. at 190:3-9.

But the next day, another helicopter flew over Tobey's house. Tobey drove back to Mott Airport. See id. at 87:1-6. Schifflett, again manning the gate, saw Tobey driving up and called Solomon. Id. at 87:7-13, 204:1-2. Someone else at the airport called law enforcement. Id. at 204:1-9. After another heated dispute, Tobey returned home where he, too, called law enforcement. Id. at 87:18-88:1. A Forest Service law enforcement officer arrested Tobey later that day. Id. at 247:9-16. The officer charged him with violating 36 C.F.R. § 261.3(c) the next day.

Tobey retained counsel: Travis Stroud. ECF No. 3. Stroud's associate filed a motion to dismiss and appeared at the motion to dismiss hearing on Stroud's behalf. Mot. to Dismiss, ECF No. 8. The motion essentially asked the Court to resolve all factual disputes in Tobey's favor and dismiss the charges. See generally Mot. to Dismiss at 2-8. The magistrate judge properly denied the

4

1 | motion. May 9, 2019 Mins., ECF No. 13.

2 | At the hearing, the magistrate judge also addressed Tobey's
3 | motion to substitute counsel. Tobey explained that Stroud had
4 | not been working with him to prepare for trial. May 7, 2019 Tr.
5 | at 2:7-22. He pointed out that Stroud was not at the hearing
6 | and had not appeared for two previous hearings. Id. Stroud's
7 | associate confirmed that Stroud had not been preparing for
8 | Tobey's case and would not be prepared for trial. Id. at 11:11-
9 | 18. Having established Stroud's inattention and lack of
10 | preparation, Tobey requested that the Court appoint John Kucera—
11 | an attorney from the CJA list—because Stroud had "exhausted"
12 | Tobey's "funds, time[,] and energy." Id. at 3:6-13, 19-22. The
13 | government opposed Tobey's motion, arguing that trial was in two
14 | days, its witnesses were already flying out to Sacramento from
15 | out of state, and that allowing a last-minute substitution of
16 | counsel would be unfairly prejudicial. Id. at 4:6-16, 8:8-25.

17 | The magistrate judge believed Tobey was bringing his motion
18 | in good faith and acknowledged that defense counsel was
19 | "unavailable [and] unprepared." Id. at 11:7-10, 19-22. Even so,
20 | he found that—absent a stipulation from the government—that
21 | continuing trial so Tobey could bring a new attorney up to speed
22 | would be too prejudicial. Id. at 10:2-13. The Court denied
23 | Tobey's motion to substitute counsel. Id. at 13:8-13.

24 | The parties proceeded to trial two days later. May 9, 2019
25 | Mins. After a one-day bench trial, the Court convicted Tobey,
26 | sentenced him to two years' probation, and ordered him to pay a
27 | $500 fine. Decision and Judgment at 7.
28 | ///

III. OPINION

A. <u>Standard of Review</u>

When a criminal defendant appeals his conviction to a district judge, the appeal is the same in scope as it would be if a defendant appealed a district court judgment to the court of appeals. Fed. R. Civ. Proc. 58(g)(2)(D). Likewise, a district judge reviewing a magistrate judge decision must use the same standard of review that the court of appeals would use if a district judge imposed the judgment. <u>U.S. v. Mancia</u>, 720 F. Supp. 2d 1173, 1178 (E.D. Cal. 2010).

Accordingly, this Court reviews the magistrate judge's denial of Tobey's motion for substitution of counsel for abuse of discretion. <u>U.S. v. Rivera-Corona</u>, 618 F.3d 976, 978 (9th Cir. 2010). The Court reviews the remainder of Tobey's challenges de novo. <u>U.S. v. Gillenwater</u>, 717 F.3d 1070, 1076 (9th Cir. 2013) (reviewing right-to-testify claim de novo); <u>U.S. v. Rodrigues</u>, 347 F.3d 818, 823 (9th Cir. 2003) (reviewing right-to-counsel claim de novo).

B. <u>Right to Counsel</u>

1. <u>Sixth Amendment</u>

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic]." The right to counsel under the Sixth Amendment "encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel"—the two rights Tobey now claims. <u>U.S. v. Brown</u>, 785 F.3d 1337, 1343 (9th Cir. 2015) (quoting <u>Rivera-Corona</u>, 618 F.3d 976, 979 (9th Cir. 2010)). The logical

corollary: if a defendant does not have a Sixth Amendment right to counsel, nor does he have either of these two derivative rights.

Notwithstanding the Sixth Amendment's sweeping language, its right to counsel does not extend to "all criminal prosecutions." Rather, it extends to all felony prosecutions, Johnson v. Zerbst, 304 U.S. 458, 466-68 (1938); Gideon v. Wainwright, 372 U.S. 335, 339-43 (1963), and some misdemeanor prosecutions, Scott, 440 U.S. at 373-74; Alabama v. Shelton, 535 U.S. 654, 667 (2002). Specifically, the Sixth Amendment prohibits courts from either (1) sentencing an uncounseled defendant to a term of imprisonment, or (2) activating an uncounseled defendant's previously-suspended prison sentence. Scott, 440 U.S. at 373-74; Shelton, 535 U.S. at 667.

A misdemeanor prosecution does not trigger the Sixth Amendment's right to counsel simply because the crime charged carries with it the possibility of imprisonment. Scott, 440 U.S. 373-74. Scott disavowed this proposition, finding the right merely prohibited courts from sentencing uncounseled defendants to a term of imprisonment. Id. It reasoned, "actual imprisonment is a penalty [so] different in kind from fines or the mere threat of imprisonment" that it warrants the extension of different protections. Id. At 373.

Even so, Shelton counsels against reading Scott too broadly. 535 U.S. at 667. There, an Alabama court convicted an uncounseled defendant of third-degree assault. Id. At 658. Although the court sentenced Shelton to a thirty-day term of imprisonment, it immediately suspended that sentence and placed

7

him on two years' unsupervised probation, conditioned on payment of court costs. Id. Shelton appealed, arguing that, absent counsel, the Sixth Amendment barred the court from imposing a term of imprisonment, suspended or otherwise. Id. At 658-59. The Supreme Court agreed:

> A suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense. The uncounseled conviction at that point result[s] in imprisonment; it end[s] up in the actual deprivation of a person's liberty.

Id. at 662 (internal citations and quotations omitted) (modifications in original). With this in mind, Shelton found that incarceration for an uncounseled conviction—be it delayed or immediate—is "precisely what the Sixth Amendment . . . does not allow." Id.; contra Nichols v. United States, 511 U.S. 738, 746-47 (1994) (holding a court may use an uncounseled misdemeanor conviction to enhance the sentence for a subsequent conviction).

Shelton, however, left open the question of whether a term of probation, untethered to a suspended prison sentence, implicates a defendant's Sixth Amendment right to counsel. 535 U.S. at 672-73. This is the question Tobey's appeal raises.

Citing U.S. v. Ramirez, 555 F. Supp. 736, 741 (E.D. Cal. 1983), Tobey tries to shield his appeal from Scott altogether. Appellant's Supplemental Brief at 2-3. In Ramirez, this Court limited Scott's "actual imprisonment" rule to state criminal proceedings. 55 F. Supp. at 739. At the time, the court faced questions about whether the Fourteenth Amendment incorporated the full scope of the Sixth Amendment's right to counsel against the states. Id. at 739-40. Ramirez determined that federally-

8

charged defendants enjoyed a more expansive right to counsel than state defendants did. Id. Specifically, the Court found that the Sixth Amendment guaranteed federal defendants a right to counsel "unless the magistrate [judge] commits on the record prior to trial that any sentence will not include imprisonment." Id. at 740. Tobey argues the same rule applies here. Appellant's Supplemental Brief at 2-3.

But, as the United States argues, Ninth Circuit cases since Ramirez have applied Scott's rule to federal defendants. Appellee's Response to Appellant's Supplemental Brief ("Appellee's Response") at 3 (quoting United States v. First, 731 F.3d 998, 1002-03 (9th Cir. 2013)), ECF No. 42; see also United States v. Gordon, 187 F.3d 649 (9th Cir. 1999). While Ramirez's rationale is legally defensible, the theory has not gained traction over the past thirty-seven years. Indeed, adopting Ramirez would require the Court to depart from the weight of authority within and without this circuit. See, e.g., Gordon, 187 F.3d at 649; U.S. v. Acuna-Reyna, 677 F.3d 1282, 1285 (11th Cir. 2012); U.S. v. Pollard, 389 F.3d 101, 103-104 (4th Cir. 2004); U.S. v. Perez-Macias, 335 F.3d 421, 425-26 (5th Cir. 2003). Ramirez, therefore, is not controlling or persuasive authority.

United States v. Moran, 403 Fed. Appx. 222, 223-24 (9th Cir. 2010), although unpublished, provides a more compelling—and recent—analysis of the question Shelton left unanswered. In Moran, a magistrate judge convicted an uncounseled defendant of three misdemeanor offenses and sentenced him to a five-year term of probation. Id. at 223. Moran appealed his sentence to the

9

district judge, arguing the sentence was "illegal" because a probation violation would result in incarceration—a result the Sixth Amendment proscribed. Id. The district judge affirmed Moran's sentence. Id. Moran then appealed the decision to the Ninth Circuit, raising the same argument. Id. The Ninth Circuit likewise affirmed, upholding Moran's probationary sentence even though it rested on an uncounseled conviction. Id. at 223-24.

Moran is too similar to this case for the Court to ignore its guidance: a probationary sentence only implicates the Sixth Amendment right to counsel when the government seeks to impose a term of imprisonment for a probation violation. Id.; cf. U.S. v. Foster, 904 F.2d 20, 21 (9th Cir. 199) (stating in dicta, "[W]e cannot agree . . . that imprisonment may be imposed for violations of probation when the defendant was denied assistance of counsel at the initial trial").

To date, Tobey has not violated the terms of his probation and the government has not sought to incarcerate him. If these two events occur, they would trigger the Sixth Amendment's protections and require this Court to determine whether the pretrial and trial proceedings effectively deprived Tobey of his constitutional right to counsel. But, as is, Tobey's right-to-counsel challenges are not ripe for review. See U.S. v. Infante-Caballero, 789 Fed.Appx 614, 615 (9th Cir. 2020); U.S. v. Linares, 921 F.3d 841, 843-44 (9th Cir. 1990). The Court therefore denies this portion of the appeal as unripe.

   2.   Criminal Justice Act

The CJA authorizes magistrate judges to provide representation "for any financially eligible person who is

charged with a Class B or C misdemeanor" when "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(A).  Tobey contends the magistrate judge erred when he declined to inquire into Tobey's financial eligibility.  Appellant's Brief at 29. But as the United States argues, the magistrate judge had no reason to assess Tobey's eligibility because the Court did not allow Tobey to discharge his retained counsel.  Appellee's Brief at 22.  As this argument demonstrates, the question of whether the magistrate judge violated the CJA is necessarily intertwined with the question of whether the magistrate judge erred in denying Tobey's motion to substitute counsel.  Consequently, the ripeness issues that preclude the Court from adjudicating Tobey's Sixth Amendment claims likewise require the Court to deny this portion of Tobey's appeal as unripe.

   C.   Right to Testify

"The right of an accused to testify in his own defense is well established, and is a 'constitutional right of fundamental dimension.'"  U.S. v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999) (quoting U.S. v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993)). This right flows from the Fifth Amendment's due process guarantee, the Fifth Amendment's right to be free from compelled testimony, and the Sixth Amendment's right to call favorable defense witnesses.  See Rock v. Arkansas, 483 U.S. 44, 51-53. The right to testify belongs to the accused, not his attorney. Pino-Noriega, 189 F.3d at 1094.  Accordingly, only the accused, not counsel, can waive the right to testify.  Id.  This waiver "must be knowing and intentional."  Id.

   Notwithstanding how deeply the right to testify lies within

the Constitution's fundamental protections, the Ninth Circuit has narrowly circumscribed this right as a basis for appeal. As the United States argues, Pino-Noriega is particularly emblematic of this winnowing:

> [W]hile the waiver of the right to testify must be knowing and voluntary, it need not be explicit. A defendant is presumed to assent to his attorney's tactical decision not to have him testify. The district court has no duty to affirmatively inform defendants of their right to testify, or to inquire whether they wish to exercise that right. . . . When a defendant remains silent in the face of his attorney's decision not to call him as a witness, he waives the right to testify.

Pino-Noriega, 189 F.3d at 1094 (internal citations and quotations omitted); see also Appellee's Response at 23-24.

The doctrine surrounding a defendant's right to testify insists defense counsel cannot waive a defendant's right to counsel, but then presumes an attorney's decision on this matter is coextensive with their client's. Id. It requires a "knowing and intentional waiver" of the right to testify. Id. And yet, it upholds waivers when a defendant is silent, id.; when he doesn't know he has the right to testify, U.S. v. Edwards, 897 F.2d 445, 446-47 (9th Cir. 1990); and when he produces evidence that he wanted to testify but was denied the opportunity, Karkehabadi v. Tampkins, No. 8:16-cv-01854-JLS-MAA, 2019 WL 3849175, at *10 (collecting cases). Under this circuit's precedent, neither defense counsel nor courts must inform a defendant about this right. Edwards, 897 F.2d at 446-47; Pino-Noriega, 189 F.3d at 1094. In short, the Ninth Circuit all but forecloses relief for the defendant who silently objects to his attorney's waiver of a right he never knew existed.

Bearing this in mind, Tobey urges the Court to adopt out-of-circuit caselaw to conduct this analysis. See Appellant's Brief at 31-33 (citing Ledezma v. State, 626 N.W.2d 134, 146 (Iowa 2001); Blackburn v. Foltz, 828 F.2d 1177, 1181-82 (6th Cir. 1987); Horton v. State, 306 S.C. 252, 255 (1991)). This Court is nonetheless bound by the Ninth Circuit's rulings.

Here, the magistrate judge allowed Tobey an opportunity to speak with his attorney before deciding whether to testify. May 9, 2019 Tr. at 263:3-4. Before they went off the record, the government attorney clarified, "I just want to make sure it's clear on the record that Mr. Tobey knows that it's his decision whether or not to testify, not counsel's decision." Id. at 263:5-8. The Court agreed, told Tobey to take his time in making the decision, and even allowed him to consult with his wife. Id. at 263:14-16, 264: 1-9. Tobey decided to testify. Id. at 264:14-15.

Once Tobey took the stand, his counsel revealed a minimal understanding of both hearsay and the Fifth Amendment privilege against self-incrimination. Id. at 265:3-6, 266:15-267:7. Upon realizing that his intended line of questioning would "open the door" for certain cross-examination, defense counsel requested to speak to Tobey again. Id. at 267:7-8. The Court obliged. Id. at 267:9. Afterward, Tobey's counsel said, "[M]y client would decline to testify and we will submit on the matter." Id. at 267:14-15. Crucially, Tobey did not object to this change of course.

As the United States argues, the proceedings below went far beyond what the Ninth Circuit requires to ensure Tobey knew the

13

right to testify was his to waive.  Appellee's Brief at 22-30.
Tobey nonetheless assented to his attorney's decision to end his
direct examination.  The Court therefore finds Tobey knowingly,
intelligently, and voluntarily waived his right to testify.

IV.  ORDER

For the reasons set forth above, the Court AFFIRMS Tobey's conviction and sentencing.

IT IS SO ORDERED.

Dated: March 24, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE